IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **KAYLA RUSH,** *individually and as Daughter and Next Friend of Cindy M. Arnold* | § § § § | **PLAINTIFF** |
| **v.** | § § § | **1:19-cv-946-HSO-RPM** |
| **JACKSON COUNTY,** *by and through its Board of Supervisors, d/b/a Jackson County Adult Detention Center, et al.* | § § § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT MIKE EZELL'S MOTION [106] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Mike Ezell's Motion [106] for Summary Judgment. After due consideration of the Motion, the record, and relevant legal authority, the Court finds that Defendant Mike Ezell's Motion [106] for Summary Judgment should be granted and Plaintiff Kayla Rush's claims against Defendant Mike Ezell should be dismissed with prejudice.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff Kayla Rush ("Plaintiff" or "Rush"), as the daughter and wrongful death beneficiary of Cindy Arnold ("Arnold"), initiated this suit on September 6, 2019, advancing four causes of action under 42 U.S.C. § 1983 against ten Defendants, including Defendant Mike Ezell ("Ezell"), the Sheriff of Jackson County, Mississippi. Compl. [1]. Plaintiff filed a First Amended Complaint [29] on February 10, 2020, naming three additional Defendants (collectively "Defendants").

1st Am. Compl. [29]. The First Amended Complaint alleges that on September 8, 2018, Arnold, who was a Type 1 diabetic, was taken into custody by the Jackson County Sheriff's Office for violating a protective order and was detained at the Jackson County Adult Detention Center ("JCADC"), in Pascagoula, Mississippi, where she was later pronounced deceased on September 10, 2018, as a result of Defendants' alleged failure to provide medical assistance. *See id.* at 10-17. With respect to Ezell, the First Amended Complaint alleges that as the Sheriff of Jackson County he "is responsible for the policies, practices, and customs of the Jackson County Sheriff's Department and the [JCADC], as well as the hiring, training, control, supervision, and discipline of its deputies." *Id.* at 6. Plaintiff further alleges that Ezell, along with Jackson County, failed "to implement and/or enforce" policies related to the provision of medical treatment to inmates at the JCADC, and failed to supervise and control the officers and medical personnel at the JCADC. *Id.* at 18-21.

Ezell now moves for summary judgment on grounds that Plaintiff has not adduced sufficient evidence to raise a genuine issue of material fact as to whether Ezell violated Arnold's constitutional rights. Mem. [107] at 8. He also maintains that even if the Court found that Ezell violated a clearly established right that he is entitled to qualified immunity. *Id.* at 10. Plaintiff responds by offering evidence of purported jail policy violations and the lack of a policy for providing uncooperative inmates with medical care. Mem. [127] at 14-17. She argues that this evidence creates a genuine issue of material fact as to whether Ezell violated clearly established law. *Id.* at 17.

II. DISCUSSION

A. Relevant legal standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). A good faith assertion of a qualified immunity defense alters the usual summary judgment burden of proof, *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)), and the plaintiff bears the burden of "establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law . . . but all inferences are drawn in his favor," *id*.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The qualified immunity analysis has two prongs: (1) "whether an official's conduct violated a constitutional right of the plaintiff," and (2)

3

"whether the right was clearly established at the time of the violation." *Brown*, 623 F.3d at 253.

The United States Court of Appeals for the Fifth Circuit has explained that the second prong of the qualified immunity analysis encompasses "two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in the light of that clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). A right is clearly established if every "reasonable officer would understand that what [she] is doing violates that right." *Baldwin*, 964 F.3d at 326 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Fourteenth Amendment to the United States Constitution affords pretrial detainees the right to receive medical care. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). In order to prove a violation of this right a plaintiff must show deliberate indifference to the pretrial detainee's serious medical needs. *Domino v. Tex. Dept. of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001). An official is deliberately indifferent when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). However, when an official's actions and decisions "are merely inept, erroneous, ineffective, or negligent," they do not rise to

level of deliberate indifference. *Alton v. Texas A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

Under § 1983, a supervisory official cannot be held vicariously liable for the actions of his subordinates. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). As a supervisor, Ezell can only be held liable if "he affirmatively participated in the acts that cause the constitutional deprivation," or "he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dept. of Protective and Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Under this theory of supervisory liability, Plaintiff must show Ezell "acted, or failed to act, with deliberate indifference to violations of [Arnold's] constitutional rights committed by [his deputies]." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.3d 386, 392 (5th Cir. 1992)).

Ezell can also be liable under § 1983 for failure to train or supervise if: (1) he failed to train or supervise those under his control; (2) a causal connection existed between Ezell's failure and the violation of Arnold's rights; and (3) the failure to train or supervise reached the level of deliberate indifference to Arnold's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). To prove deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Goodman v. Harris Cnty.*,

5

571 F.3d 388, 395 (5th Cir. 2009) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). A plaintiff may also show deliberate indifference without proving a pattern of similar violations if the single incident exception applies. *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021). This exception "is narrow and to rely on the exception 'a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quoting *Estate of Davis*, 406 F.3d at 386).

B.   Analysis

1.   The parties' arguments

Plaintiff's § 1983 claim against Ezell is predicated on his alleged failure to: (1) "formulate policies or institute training that would prevent the provision of inadequate medical treatment to inmates at the [JCADC];" (2) "institute a policy of documentation and supervision concerning the provision of medical treatment;" and (3) "supervise and control" Jackson County employees and the medical personnel at the JCADC. 1st Am. Compl [29] at 19-20. Plaintiff also asserts that Ezell engaged "in a pattern or practice of denying [Plaintiff] access to adequate medical treatment." *Id*. at 22.

Ezell argues that that he is entitled to summary judgment because Plaintiff has not satisfied her burden of negating his qualified immunity. Mem. [107] at 11. He maintains that Plaintiff has not shown that he violated a clearly established

right, acted unreasonably, or acted with deliberate indifference to Arnold's serious medical needs. *Id*. at 9-10. In support of this position Ezell draws the Court's attention to Plaintiff's failure to produce any evidence of "unconstitutional policies, a failure to train or supervise, or a pattern or practice of inadequate medical treatment provided to inmates." *Id*. at 11. He also notes that the Plaintiff "has not alleged any personal involvement by Ezell in the events surrounding . . . Arnold's incarceration or death." *Id*. at 8.

In response, Plaintiff raises two issues which she maintains demonstrate a genuine issue of material fact as to whether Ezell violated a clearly established right and whether Ezell acted unreasonably. Resp. [127] at 17. Plaintiff first argues that Ezell failed to "train, supervise, or discipline his deputies," because officers under Ezell's control violated jail policies. *Id*. at 14. She points to three specific instances. The first is the failure of Defendants Officer Jeremy Bobo and Corporal Kristofer Gray to open Arnold's cell door and check on her during the 10:00 p.m. headcount. *Id*. at 15. The second is that Defendant Officer Chad Vidrine logged rounds he did not perform. *Id*. at 16. The third is the jail staff's failure to provide Arnold with food and to attend to her medical needs. *Id*. at 16.

Plaintiff also argues that another issue is created by Ezell's sworn response to Plaintiff's interrogatory that "Jackson County has no written policy or procedure detailing how to provide inmates with medical intervention when an inmate is uncooperative." *Id*. at 16 (quoting Ex. 9 [127-9] at 3). Plaintiff asserts that it is "unacceptable" to not have a policy for the provision of medical care for difficult and

7

uncooperative inmates, and that the lack of a policy "likely impacted . . . Arnold's care and treatment." *Id.* at 16-17.

Based upon the summary judgment record, Plaintiff has not demonstrated that Ezell either personally participated in the alleged wrong or instituted an unconstitutional policy which resulted in the alleged wrong. Nor has she established that Ezell failed to train or supervise his deputies and the medical personnel at the JCADC. In addition, Plaintiff's failure to promulgate policy and failure to train or supervise claims cannot survive summary judgment because she presents no competent summary judgment evidence tending show that Ezell acted with deliberate indifference to Arnold's rights. *See Porter*, 659 F.3d at 446. Accordingly, Ezell is entitled to summary judgment.

2.  <u>Plaintiff has not shown Ezell personally participated in the incidents in question</u>

First, Plaintiff has not alleged, and there is no evidence in the record to indicate, any personal participation by Ezell in Arnold's detention at the JCADC or the denial of medical care. *See* 1st Am. Compl. [29]; Resp. [127]. Rather, she asserts that Ezell is liable for his failure to implement or enforce policies related to the provision of medical treatment and for his to failure to train or supervise the JCADC employees. 1st Am. Compl. [29] at 19-22. Nor can Ezell be held vicariously liable for any of the alleged actions of the other Defendants. *Thompson*, 245 F.3d at 459.

3. <u>Ezell's alleged failure to promulgate policy</u>

The Fifth Circuit has recognized that a failure to adopt a policy can be deliberately indifferent, but it must be "obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Brown*, 623 F.3d at 257. Generally, a plaintiff must establish a pattern of similar violations to demonstrate that a policy or the absence of a policy was deliberately indifferent. *Porter*, 659 F.3d at 447; *see also Walker v. Upshaw*, 515 F. App'x 334, 341 (5th Cir. 2013). Plaintiff has presented no such evidence. She argues that Ezell should have instituted a policy which detailed how to provide medical care to uncooperative inmates and theorizes that such a policy "likely" would have impacted Arnold's care and treatment in JCADC. Resp. [127] at 16-17. This unsubstantiated assertion is not enough to withstand summary judgment. *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987). Nor has Plaintiff alleged or presented any evidence of a pattern of similar violations. As such, Plaintiff has not carried her summary judgment burden to show that Ezell acted with deliberate indifference in failing to adopt a particular policy.

4. <u>Ezell's alleged failure to train or supervise</u>

With respect to her failure to train or supervise claim, Plaintiff has submitted the Jackson County Sheriff's Department death investigation report and an interview with Inmate Olivia Reynolds to establish that violations of jail policies led to Arnold's death. Ex. 6 [127-6]; Ex. 4 [127-4]. The report prepared by Sergeant Tracy Odom details what Plaintiff asserts were violations of policy by Officers

Jeremy Bobo, Chad Vidrine, and Corporal Kristofer Gray. Ex. 6 [127-6] at 2-4. However, nothing in Sergeant Odom's report or in any other evidence in the record identifies which specific policies these deputies violated. Mem. [142] at 2. Inmate Reynolds details the jail staff's alleged failure to provide Arnold with her food tray and failure to provide her with adequate medical care. Ex. 4 [127-4]; Resp. [127] at 16.

      Even if the events detailed in Sergeant Odom's report and alleged by Inmate Reynolds are true, the incidents upon which Plaintiff relies are single, one-off purported violations, and the Fifth Circuit has held that proof of a single incident is ordinarily insufficient to establish supervisory liability under § 1983. *Estate of Davis*, 406 F.3d at 383 (quoting *Snyder v. Trepagnier*, 142 F. 3d 791, 798 (5th Cir. 1998)). To rise to the level of deliberate indifference on a failure to train or supervise claim, the supervisor must have actual or constructive notice "that a particular omission in the training program causes . . . employees to violate citizens' constitutional rights" and must nevertheless "choose[] to retain the program." *Zadeh v. Robinson*, 928 F.3d 457, 473 (5th Cir. 2019) (quoting *Porter*, 659 F.3d at 447) (internal quotation marks omitted). A plaintiff ordinarily must show "at least a pattern of similar violations" to meet this standard. *Thompson*, 245 F.3d at 459. Plaintiff has submitted no evidence of any prior similar violations due to Ezell's lack of supervision or training and Ezell therefore cannot be said to have been on notice of the inadequacy of the training program.

10

Plaintiff has also failed to demonstrate that Ezell's training was obviously inadequate and obviously likely to result in a constitutional violation. In fact, Plaintiff has not offered any specific evidence regarding the training, or lack thereof, Jackson County deputies received. Mem. [142] at 6. Ezell has presented evidence that the officers in question were trained in compliance with Mississippi law. Ex. 2 [141-2] at 1-3. Specifically, each officer was trained in accordance with the County Jail Officers Training Program, *see* Miss. Code Ann. § 45-4-1 *et seq.*, and they received training on handling medical emergencies and on constitutional law, *id*. Rather than addressing the adequacy of this training, Plaintiff merely relies on the fact that Arnold died and that some of the officers may have violated jail policies to demonstrate that Ezell failed to properly train or supervise. 1st Am. Compl. [29] at 19-22; Resp. [127] at 14-16. This is insufficient to prove that Ezell was deliberately indifferent to Arnold's rights. *See, e.g., Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 483 (5th Cir. 2021) (holding that the plaintiff failed to establish the first element of a failure to train or supervise claim where she relied on the incident occurring to demonstrate the need for additional or different training).

Finally, Plaintiff has not shown deliberate indifference under the single incident exception. This exception applies only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003). The Fifth Circuit generally reserves this exception for the rare case where a

11

supervisor provided no training whatsoever. *Pena v. City of Rio Grande, Tex.*, 879 F.3d 613, 624 (5th Cir. 2018).

Plaintiff did not allege in either the First Amended Complaint [29], nor does she argue in her Response [127] in Opposition, that Ezell completely failed to train or supervise his deputies and JCADC medical staff on providing medical care. 1st Am. Compl. [29]; Resp. [127]. Instead, Plaintiff contends that the Ezell "did not take any remedial actions" in the form of training and that "had [Ezell] exercised [his] duties to supervise and control the medical personnel" at the JCADC, Arnold would not have received inadequate medical care. 1st Am. Compl. [29] at 19- 20. To support these claims, Plaintiff has presented evidence of purported violations of jail policy by individual employees, rather than evidence of the complete absence of any training. Resp. [127] at 14-16. This is insufficient, particularly where the summary judgment record indicates that the deputies who allegedly violated jail policies were in fact trained on handling medical issues. *See* Ex. 3 [142-3]. The Court finds that the single incident exception does not apply.

For the forgoing reasons, the Court finds that Plaintiff has not shown a genuine issue of material fact as to whether Ezell violated Arnold's clearly established constitutional rights. Ezell is entitled to summary judgment.

### III.  CONCLUSION

To the extent the Court has not addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant

Mike Ezell's Motion [106] for Summary Judgment is **GRANTED** and Plaintiff Kayla Rush's claims against him are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 16th day of September, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE